### UNITED STATES of America

v.

### Henry P. LOMBARD, Jr., Hubert E. Hartley, III.

### Crim. No. 93–27–B.

United States District Court,
D. Maine.

Nov. 2, 1993.

Thimi R. Mina, Asst. U.S. Atty., Portland, ME, for Government.

Jerome B. Goldsmith, Linscott, Slater & Goldsmith, Bangor, ME, Ronald W. Bourget,

Bourget & Bourget, P.A., Augusta, ME, for defendant Lombard.

Bruce C. Mallonee, Rudman & Winchell, Bangor, ME, John Alsop, Ketterer & Alsop, Norridgewock, ME, for defendant Hartley.

## ORDER AND MEMORANDUM OF OPINION

BRODY, District Judge.

Co-defendants Hubert Hartley and Henry Lombard were tried separately in state court in the state of Maine for the November 1990 murder of two young men. Hartley who was tried first, waived his Fifth Amendment privilege and testified in his defense. A jury found him not guilty. Lombard's trial followed. Lombard also waived his Fifth Amendment privilege and took the stand. The State called Hartley as a witness against Lombard, and he testified at length. A jury found Lombard not guilty. Following the not guilty verdicts, a federal grand jury indicted Co-defendants on charges of conspiracy to commit offenses against the United States, and unlawful possession of a firearm by a felon, or aiding and abetting such possession.

Co-defendants and the Government filed motions relating to the introduction of evidence introduced in, or derived from, the state murder trials. Hartley has moved to suppress statements made during custodial interrogation, evidence seized as a result of statements made to the police, and evidence seized as a result of an allegedly invalid search warrant. Because his motion is procedurally barred by collateral estoppel, and because suppression is not mandated in this case, the Court *DENIES* Hartley's Motion to Suppress. Hartley also filed a Motion for Relief from Prejudicial Joinder, seeking severance. Lombard joins in this motion. The Court is persuaded that severance is not appropriate, and therefore *DENIES* Co-defendants' motion.

### I. Motion to Suppress

■ In his Motion to Suppress, Hartley argues that this Court should suppress state-ments he made while under custodial interrogation, evidence seized as a result of his statements to the police, and evidence seized pursuant to an allegedly invalid search warrant. Hartley made the same arguments during the course of his state court trial, and the state trial judge resolved these issues against Hartley in thorough and well-reasoned opinions.

The Court is satisfied that Hartley is collaterally estopped from re-asserting the issues contained in his instant motion to suppress. In *State v. Moulton*, 481 A.2d 155 (Me.1984), a defendant was indicted after a court had already held a suppression hearing pursuant to an earlier indictment on slightly different grounds. The court refused to grant defendant another suppression hearing because he faced sufficiently serious charges in the first indictment, and therefore had every incentive to litigate the suppression issue "fully and vigorously." *Id.* at 162 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979)).[1] Hartley faced murder and accomplice liability in his state court trial. The seriousness of these charges provided the proper incentive to litigate fully and vigorously.

■ This Court must give the state court suppression findings the preclusive effect that they would have in a Maine court. *See* 28 U.S.C.S. § 1738 (1989); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). A finding must have been actually litigated on the merits and determined by a valid final judgment to be given preclusive effect. *Hossler v. Barry*, 403 A.2d 762, 767 (Me.1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331–33, 99 S.Ct. 645, 651–53, 58 L.Ed.2d 552 (1979). Hartley's suppression motion was fully litigated in the state court proceeding. In fact, Hartley supported the motion before the Court by submitting a copy of his memorandum in support of suppression from the state court proceedings. The state court suppression decision is a valid final judgment for purposes of collateral

---

1. The court found that the search in question "was valid or invalid irrespective of the charges

on which the State ultimately proceed[ed]." *Moulton*, 481 A.2d at 162.

estoppel.[2] It was properly raised, submitted for determination, and decided. *See Kathios v. General Motors Corp.,* 862 F.2d 944, 946 (1st Cir.1988).

■■■ Were Hartley's arguments not barred by collateral estoppel, the challenged evidence would be admissible for impeachment purposes. Hartley's first challenge is to the admission of statements he made during custodial interrogation. Voluntary statements are not suppressed for impeachment purposes. *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). To determine whether Hartley's statements were voluntary, the Court must examine all the surrounding circumstances to determine whether the "conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined." *U.S. v. Pinto,* 671 F.Supp. 41, 54 (D.Me.1987) (citing *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961); *U.S. v. Ferrara,* 377 F.2d 16 (2d Cir.1967)). A voluntary statement "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *United States v. Jackson,* 918 F.2d 236, 241–42 (1st Cir.1990) (quoting *United States v. Bram,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897)). The conduct of the police during interrogation did not overbear Hartley's will nor his rational intellect. Hartley's statements therefore were voluntary, and may be admitted for impeachment purposes.

■■■ Hartley also argues that the discovery of the murder victims' bodies based on statements he made while under custodial interrogation is inadmissible. The Court declines to suppress the evidence seized pursuant to these statements. The exclusionary rule mandates the exclusion of evidence seized in violation of the Fourth Amendment. However, the inevitable discovery exception to the exclusionary rule allows a court to admit "illegally" obtained evidence if the evidence would have been otherwise discovered through independent and lawful means. *Nix v. Williams,* 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984); *United States v. Eaton,* 890 F.2d 511, 513 (1st Cir. 1989), *cert. denied,* 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990). At the time Hartley revealed the location of the bodies, a search for the bodies was already underway. The police may well have searched the road adjacent to the area where the bodies lay under brush the next day. The bodies inevitably would have been discovered either by the police search, or by hunters or others frequenting the area.

■■ Finally, Hartley argues that the Court should suppress evidence seized pursuant to an allegedly invalid search warrant. The police searched Co-defendants' apartment pursuant to a search warrant issued November 26, 1990. The police obtained the search warrant with an affidavit that contained false or misleading statements.[3] The affidavit supports a finding of probable cause, however, even if the court excises the false or misleading statements. *See State v. Wing,* 559 A.2d 783, 786 (Me.1989), *cert. denied* 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 317. It is therefore ordered that Hartley's Motion to Suppress be denied.

### II. Motion to Sever

■■ Co-defendants seek to sever their joint trial on the grounds that admitting their state court testimony in a joint trial will violate their Fifth and Sixth Amendment rights. The Court denies their motion to sever because the Co-defendants' constitu-

---

**2.** Hartley argues that the state court decision is not final for purposes of collateral estoppel because Hartley did not as a matter of law have the right to appeal. This argument fails. First, for collateral estoppel to apply, the state court decision need not be "final" under 28 U.S.C. § 1291, but "sufficiently firm to be accorded conclusive effect." *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1135 (Fed.Cir.1985) (citing Restatement (Second) of Judgments § 13 (1982)). Sec-

ond, the state trial judge did review his initial decision. *See Maine v. Hubert Hartley,* No. CR–91–54 (Me.Supr.Ct. filed Oct. 16, 1991).

**3.** Paragraph 10 asserts that Co-defendants' landlord contacted the police, subsequently entered Co-defendants' apartment, and reported items missing from the apartment. In fact, the landlord acted at the request of the police.

tional rights can be otherwise protected by the appropriate redaction of Co-defendants' state court testimony.

## A

■ Both Hartley and Lombard testified at their respective state trials. There is no evidentiary or constitutional bar to the Government's use of a Co-defendant's state court testimony against the speaker.

The testimony is not hearsay. Fed. R.Evid. 801(d)(2)(A) ("A statement is not hearsay if [t]he statement is offered against a party and is the party's own statement").

Hartley asserts that his state court testimony resulted from coercion, and that to introduce his statements in this trial would violate his Fifth Amendment rights. He argues that coercion arose because the State indicted him for murder, and forced a tactical choice to "testify or weaken his defense." This is not the type of coercion that gives rise to a Fifth Amendment violation.

In *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) the Court ruled that the Fifth Amendment bars the use of public officials' confessions obtained under threat of removal from office. *Garrity* and its progeny contain two distinct features:

(1) the person being investigated is explicitly told that failure to waive his constitutional right against self-incrimination will result in his discharge from public employment (or a similarly severe sanction imposed in the case of private citizens); and (2) there is a statute or municipal ordinance mandating such procedure.

*United States v. Indorato*, 628 F.2d 711, 716 (1st Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980). The pressure on Hartley did not rise to this level of coercion. Co-defendants possessed the constitutional privilege not to testify, and decided not to exercise the privilege for whatever reason, tactical or otherwise.

## B

■ The testimony of the Co-defendants given at their respective state court trials may be offered in their joint trial against the non-speaker. This testimony is not hearsay. Fed.R.Evid. 801(d)(2)(E) ("A statement is not hearsay if [t]he statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy").[4] The confrontation clause of the Sixth Amendment requires, however, that the parties appropriately redact transcripts of the proffered state court testimony. *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Bruton v. United States*, 391 U.S. 123, 133–34, 88 S.Ct. 1620, 1626–27, 20 L.Ed.2d 476 (1968).

■ The Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." This right of confrontation includes the right to cross-examine witnesses. *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). Therefore, "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." *Richardson*, 481 U.S. at 206, 107 S.Ct. at 1707. Instructing the jury to treat the pre-trial confession as inadmissible hearsay when deciding the guilt or innocence of the non-confessing defendant will not cure Sixth Amendment harm. *Bruton*, 391 U.S. at 137, 88 S.Ct. at 1628–29.[5] Eliminating any reference to the implicated Co-defendant's existence by redacting the state trial transcripts will protect Co-defendants' Sixth Amendment rights. *See Richardson*, 481 U.S. at 211, 107 S.Ct. at 1709; *Bruton*, 391

---

4. At trial, the Government must lay a foundation by presenting "substantial, independent evidence of the conspiracy, at least enough to take the question to the jury" pursuant to Rule 801(d)(2)(E). *United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974).

5. The statement in question in *Bruton* was an extrajudicial confession. *Bruton*, 391 U.S. at 135, 88 S.Ct. at 1627–28. Former testimony is more reliable than the *Bruton* confession. *See* Edward W. Cleary, *McCormick on Evidence* 760 (3rd ed. 1984). However, this distinction does not obviate the fact that Co-defendants' Sixth Amendment rights may be violated absent redaction.

U.S. at 133–34 (n. 10), 88 S.Ct. at 1626 (n. 10).[6]

■■■■ Severance is an inappropriate remedy to protect the Sixth Amendment rights of Co-defendants. A strong judicial preference exists for trying defendants together when accused in a single indictment of joint participation in criminal activity. *United States v. Mazza*, 792 F.2d 1210, 1224 (1st Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1290, 94 L.Ed.2d 147 (1987). Further, when defendants face a conspiracy charge, severance is particularly inappropriate. *Richardson*, 481 U.S. at 209–10, 107 S.Ct. at 1708–09; *United States v. Rawwad*, 807 F.2d 294, 295 (1st Cir.1986), *cert. denied*, 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987).

### C

The Government seeks to introduce Hartley's testimony at Lombard's trial. As explained above, this testimony is not hearsay if offered against Hartley, Fed.R.Evid. 801(d)(2)(A), and there is no Sixth Amendment bar to the introduction of this type of testimony.

Hartley's testimony at Lombard's trial is admissible against Lombard in a joint trial. This testimony is hearsay, but falls within the former testimony exception to the hearsay rule. Fed.R.Evid. 804(b)(1).[7] Rule 804(b)(1) requires that the declarant be "unavailable". Hartley is an "unavailable" witness, because the Fifth Amendment privilege renders a witness "unavailable." *United States v. Salerno*, 937 F.2d 797, 804–5 (2nd Cir.1991), *rev'd on other grounds*, —— U.S. ——, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992). *See also United States v. Zurosky*, 614 F.2d 779, 792 (1st Cir.1979), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826 (1980).

Rule 804(b)(1) also requires that the party against whom the testimony is offered have an "opportunity and similar motive" to develop the testimony. Lombard had the opportunity to develop Hartley's testimony in Lombard's state court trial. The State's direct examination of Hartley was expansive and complete with the exception of an inquiry into Hartley's version of who shot the gun that killed the victims. Lombard's counsel performed a thorough cross-examination, including Hartley's version of the actual commission of the murder. Further, Lombard faced liability both for murder and accomplice liability. Accomplice liability would have been established by showing an effort to plan, conceal and escape from the crime. *See State v. Libby*, 435 A.2d 1075, 1077 (Me. 1981). That charge provided Lombard's counsel a motive similar to the case at bar around which to structure his cross-examination.[8]

Lombard does face potential Sixth Amendment harm if Hartley invokes his Fifth Amendment privilege and Hartley's testimony is introduced at the joint trial. As previously indicated, this harm can be cured by the Court requiring redaction of Hartley's testimony to eliminate any reference to Lombard. *Richardson*, 481 U.S. at 211, 107 S.Ct. at 1709.

### Conclusion

Co-defendant Hartley's Motion to Suppress is *DENIED*. Co-defendants' Motion for Relief from Prejudicial Joinder is *DENIED*.

*SO ORDERED.*

---

**6.** The Government indicated in its Response to Defendant's Pretrial Motions, and Incorporated Memorandum of Law that it is prepared to respond to the Court's redaction request. (Govt. Resp. to Def.'s Pretrial Mot. at 16 (n 7).)

**7.** Rule 804(b)(1) provides (in relevant part): Testimony given as a witness at another hearing of ... a different proceeding ... if the party against whom the testimony is now offered ... had an opportunity and similar mo-

tive to develop the testimony by direct, cross, or redirect examination ... [is] not excluded by the hearsay rule if the declarant is unavailable as a witness.

**8.** Lombard's counsel did not need a motivation identical to the one counsel has in this trial. *See United States v. King*, 713 F.2d 627, 630 (11th Cir.1983), *cert. denied*, 466 U.S. 942, 104 S.Ct. 1924, 80 L.Ed.2d 470 (1984).